TYSON, Presiding Judge.
The appellant was charged in a two-count indictment with the grand larceny of, and buying, receiving, or concealing, $395.00, the personal property of John T. Bonasera. The jury found the appellant guilty of grand larceny, as charged, and fixed the value of the stolen property at $395.00. The trial court entered judgment in accordance with the verdict and set sentence at two years imprisonment in the penitentiary.
John T. Bonasera testified that on September 28, 1972, he had been working for ten years at Ousler’s Sandwich Shop in Birmingham, Alabama. A part of his duties was to make bank deposits, and on this date he had a blue bank bag containing $395.00 in cash and some checks totaling $508.00, and was walking toward a truck on the parking lot at 201 42nd Street, South, when he saw a black man crawling on his hands and knees. Just as Bonasera opened the door to the truck, the man shoved him against the side of the truck, grabbed his bank money bag, containing the deposit, then got up and ran. Bonasera began chasing him on foot for about two blocks. He stated that the man looked back several times and he got a good look at his face. He stated that the man got into an automobile, that Bonasera’s supervisor at the Sandwich Shop picked him up in a truck and they began to give chase. He stated that the man got in on the righthand side of the car at the end of the alley on 43rd Street, and that when they got within fifty feet of the car he wrote down the tag number. Bonasera described the car as a blue and white 1964 Pontiac with a Jefferson County tag, No. 1-16674. He stated that the automobile doubled back and almost hit the truck in which he was riding, that the vehicle was lost in traffic near 43rd and 3rd Avenue, South, in Birmingham. He stated that he gave a description of this individual to Sergeant Hill of the Birmingham Police Department and advised him that he had been headed for the Exchange Security Bank on 3rd Avenue, South, at the time of the incident.
On cross-examination Mr. Bonasera testified that Mrs. Christine Elmore was the owner of the Ousler’s Sandwich Shop, and that the proceeds belonged to her, though they were in his possession at the time the money bag was seized from his hand. He testified that while he wore glasses, his vision was 20-20, and that in the process of chasing the appellant on foot, he had a good look at the man’s face as he kept looking back every few feet while running.
Mr. Bonasera stated that he selected the appellant’s photograph from some sixteen photographs of individual blacks which were brought to him by Sergeant Hill, and that he did not view the appellant at a lineup, though he subsequently saw him at a preliminary hearing in Judge Gwin’s court. Bonasera made a positive in-court identification of the appellant and of the tag number as he wrote it down while giving chase in the pickup truck. He testified there were two other black men in the Pontiac automobile which picked up the appellant. He described the appellant as having an Afro hairdo and a mustache at the time of the incident.
Charles L. Daniels, Jr. testified that he was the Office Manager for Woods Chevrolet, located at 228 South 19th Street in Birmingham. He testified that his company maintained copies of the “G.M.A.C. Contract” when automobiles were purchased, and that on July 18, 1972, his company sold a 1964 blue and white four-door Pontiac Catalina sedan to Warren Harris, Jr., the appellant, who at that time resided at 1508 17th Street, Southwest, in Birmingham. He testified that his company had purchased the car on a trade-in from Mr. Wil *505 lard G. Wynn, and that the salesman who sold the car to the appellant was Mr. Cruce. He testified that the license tag number at the time of the sale was 1-16674.
Glen Cruce testified that for twenty years he had been employed as a salesman at Woods Chevrolet in Birmingham. He testified that the buyer of the contract, dated July 18,1972, was Warren Harris, Jr., the appellant, that the automobile he purchased was a 1964 four-door Pontiac Catalina sedan with a Jefferson County license tag, No. 1-16674. Mr. Cruce testified that he typed this contract, that he remembered the appellant making the purchase, that it was a cash sale, and that the contract bore appellant’s signature.
Edmun K. Steedman testified that he was custodian of the records for tag registration in the Department of Revenue, Jefferson County, Alabama. He testified that the Alabama license tag for 1964, No. 1-16674, was originally registered in the name of W. G. Wynn of 1120 Columbiana Road, Birmingham, Alabama, and on July 21, 1972, was transferred to Woods Chevrolet Company. He testified that this tag was subsequently transferred to Warren Harris, Jr., of 1508 17th Street, Southwest, in Birmingham, and that the registration indicated this was for a 1964 Pontiac Catalina four-door sedan.
On cross-examination Mr. Steedman indicated that the transfer from Woods Chevrolet Company to the appellant on his office records was dated November 15, 1972.
Christine Elmore testified that she was the owner of Ousler’s Sandwich Company on September 28, 1972. She testified that shortly after 1:30 p. m., Mr. Bonasera left the building, and walked across the parking lot to take a deposit to the Exchange Security Bank. She said that there were about three others walking in the parking lot just prior to Mr. Bonasera’s going out there, and that she saw a black man shove Mr. Bonas-era against the side of the truck and grab the money bag, then start running. She stated that Mr. Bonasera started running after him, that she and the others followed on foot, that one of the drivers got into a truck, passed them, and picked up Mr. Bo-nasera, then gave chase to the blue and white Pontiac car, which subsequently got away from them in traffic. She said that Mr. Bonasera had run about one-half a block when he was picked up. She stated that there were three black men in the Pontiac when they doubled back and passed them, then got away in traffic. She stated that a Mr. Elgin Reeves was driving the truck when they attempted to pursue the car. Mrs. Elmore further stated that she could not positively identify the man who grabbed the money bag from Mr. Bonasera.
Gerald R. Hill testified that he was a sergeant with the Birmingham Police Department on September 28, 1972. He stated that he went to Ousler’s Sandwich Shop at 201 42nd Street, South, and talked with Mr. Bonasera and Mrs. Elmore. He stated that he was given a description of a black male by Mr. Bonasera, and that on October 3, 1972, he returned with sixteen black and white photographs of black males and placed them face up, five or six in a row, for Mr. Bonasera to check. He testified, that Mr. Bonasera had described his assailant as being a black male in his twenties and around six feet two inches tall, weighing approximately 173 pounds, that he was “slender built, medium complected, light mustache and semi-Afro hairdo.” Sergeant Hill stated that Bonasero also identified the 1964 Pontiac blue and white, four-door, with a Jefferson County license tag, No. 1-16674. He stated that without hesitation Mr. Bonasera selected the photograph of the appellant, Warren Harris, Jr. The several police photographs were placed in evidence. Sergeant Hill testified that they did not conduct a police lineup, but that Mr. Bonasera, upon examination of the photographs, and also at the preliminary hearing in Judge Gwin’s Court, identified the appellant. Further, from the record (R. 85):
“Q. I will [ask] you whether or not Mr. Bonasera made the statement to you that the only time he saw this Defendant was when he was running away from him?
“A. Not that I recall.
“Q. You don’t recall him saying that?
*506 “A. That he saw him running away from him, no. He told me he chased the man.
“Q. I will ask you whether or not you recall Mr. Bonasera saying the only time he saw this party that took his money was when he was running away from him, and he saw the back of his head and as he looked around at him.
“A. I don’t recall that. He told me he saw the man take his money, and he chased the man.
“Q. What you are telling us is that without hesitation he picked out Warren Harris out of those pictures; is that correct?
“A. I’m saying he went through those 16 pictures and said this is the man that took my money, yes, sir.
“Q. How long did it take him to do that?
“A. I don’t know. I guess he looked at the pictures five to eight minutes, I reckon.”
Sergeant Hill also stated on cross-examination that he saw the appellant, Warren Harris, Jr., driving the 1964 Pontiac sometime the month following the incident in question.
The appellant’s motion to exclude the State’s evidence was overruled.
Phillip Edward Crane testified that he owned Phil’s Barber Shop at 320 17th Street, North, between 3rd and 4th Avenues in Birmingham. He testified that he had known Warren Harris, Jr., just about all his life, and that on Thursday, September 28, 1972, the appellant had come by his shop that morning and gotten a haircut. He stated that he left the shop after making a telephone call sometime between 12:00 and 12:30. Crane stated that he gave the appellant a “low medium haircut,” and that the appellant was not wearing a mustache. Crane also stated that he had been dating the appellant’s sister for sometime, and that he had never known the appellant to wear an Afro wig. Crane also stated that he knew the appellant had purchased a 1964 Pontiac during the summer of 1972, but that sometime between Labor Day and the middle of October, the car was parked in front of the appellant’s home, and that the appellant was driving a 1966 or 1967 blue Ford.
On cross-examination Crane stated that he had been cutting the appellant’s hair for about five years, and that they were real good friends, having been reared together in Titusville. Crane further stated that he had been to appellant’s home numerous times as he dated his sister. Crane could not give any other date that he specifically recalled the appellant being in his barber shop, and that he had last gotten a haircut about three weeks prior to September 28. He also stated that they had gone to Carver High School together.
Carolyn Parham testified that she was employed by the R. L. Pope and Company which got out the City Directory, that prior to that time she had worked for the Department of Revenue for the State of Alabama. She testified that she had been going with the appellant, and in fact lived with him as husband and wife for about two years, though they were not actually married. She testified that in September, 1972, the appellant was living at 1508 17th Street, Southwest, with his mother, Katie Harris, and that she, too, had lived there with the appellant. She testified that the 1964 blue and white Pontiac which the appellant had purchased in July had transmission trouble around Labor Day, and that the appellant did not have it fixed until October, that during September the appellant was driving a 1966 Ford and worked at Wilson’s Service Station on Graymont. She testified that the Ford belonged to one Willie Witcher, and that it was navy blue.
On cross-examination Carolyn Parham testified she was presently under the care of Dr. Potts.
Phillip Crane was recalled and testified that on November 14,1968, while serving in the Armed Forces, he was convicted of robbery and sentenced to five years in the penitentiary, that he had also been convicted on August 23, 1966, for larceny and sentenced to fourteen months at Ft. Leavenworth, Kansas.
*507 The appellant then in rebuttal recalled Mr. Steedman of the State Revenue Department and sought to place in evidence the owners of Jefferson County vehicles and describes them as follows: Tag No. 1-16674, issued to Warren Harris (transferred to him) for a 1964 Pontiac Catalina; Tag No. 1-16634 for a 1969 Pontiac Tempest; Tag No. 1-16677, a 1964 Pontiac automobile and Tag No. 1-16679, a 1963 Pontiac automobile.
After argument the trial court, other than allowing the vehicles to be identified as a 1969 Pontiac Tempest, a 1964 Pontiac Starehief, and a 1963 Pontiac Bonneville, sustained the State’s objection to any additional information with reference to these vehicles.
I
The appellant contends that the trial court erred to reversal by not allowing him to place in evidence the ownership and additional description of the several automobiles as rebuttal testimony. As heretofore noted, the appellant did not attempt to place these matters in evidence when the case was with him, but waited until after the State’s rebuttal to attempt to introduce this testimony. Mr. Justice Thomas, in Scott v. State, 246 Ala. 545, 21 So.2d 703, indicated:
“The time and manner of introducing and closing the evidence in a suit are necessarily within the judicial discretion of the presiding judge. So where a witness was allowed to be examined in a suit by a defendant after the plaintiff had closed his rebutting testimony, on the ground (as expressed by the court) that new facts had been disclosed, such decision held not revisable on error. Hutchins v. Childress & Baker, 4 Stew. & Port. 34; Gayle v. Bishop, 14 Ala. 552. The court may in its discretion decline to permit the defendant to introduce evidence after the plaintiff has closed his evidence in rebuttal. Borland v. Mayo, 8 Ala. 104.”
The late Judge W. J. Haralson, in writing for this Court in Green v. State, 51 Ala.App. 654, 288 So.2d 191, stated the rule in this manner:
“Admission of testimony in rebuttal is largely in the discretion of trial court. See numerous cases cited in Volume 6A, Alabama Digest, Key No. 683, et seq. This rule has been held to apply especially to testimony which properly should and could have been offered in chief. Authorities, supra."
We cannot say that the rulings referred to are error. It is within the trial court’s discretion to allow in rebuttal testimony which more properly should have been offered as part of the case in chief. Blackwell v. State, 264 Ala. 553, 88 So.2d 347; and Veith v. State, 48 Ala.App. 688, 267 So.2d 480. There was no attempt here to offer the evidence with reference to the description and ownership of the other vehicles until after the State had placed its rebuttal testimony before the jury. Such testimony as was here attempted by the appellant on rebuttal was based on conjecture and speculation and shed no light on the positive identification by Mr. Bonasera of the appellant. Moreover, there was here a full and searching cross-examination conducted by appellant’s counsel of both Mr. Bonasera and Sergeant Hill. Thus, no error is here shown. Burt v. State, 54 Ala.App. 1, 304 So.2d 243, cert. denied, 293 Ala. 749, 304 So.2d 246; Logan v. State, 291 Ala. 497, 282 So.2d 898.
We have carefully examined this record and find same to be free from error. The judgment of the trial court is due to be and the same is hereby
AFFIRMED.
All the Judges concur.